UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MING WEI,                              :      **CASE NO. 1:11-CV-00688**
                                       :
            Plaintiff                  :      (Judge Jones)
                                       :
      v.                               :      (Magistrate Judge Smyser)
                                       :
                                       :
COMMONWEALTH OF PENNSYLVANIA,          :
*et al.,*                              :
                                       :
            Defendants                 :

## <u>REPORT AND RECOMMENDATION</u>

      This is an employment-discrimination case.  For the
reasons set forth below, we recommend that the defendants'
motion to dismiss the third amended complaint be granted in
part and denied in part.  We further recommend that the case be
remanded to the undersigned for further proceedings.

I. Background and Procedural History.

      The plaintiff commenced this action by filing a
complaint on April 13, 2011.  He later filed an amended

complaint, then a second amended complaint, and then a third
amended complaint.

The third amended complaint names the following as
defendants: 1) the Commonwealth of Pennsylvania; 2) the
Pennsylvania Department of Health (PADOH); 3) the Pennsylvania
State Civil Service Commission; 4) Veronica Urdaneta;
5) Stephen Ostroff; and 6) Tiffany Burnhauser.  The third
amended complaint also names as defendants John Does 1-8.  The
plaintiff alleges the following facts in the third amended
complaint.

The plaintiff, who is of Chinese origin, worked in the
PADOH from 2001 until 2007.  He worked with data regarding
HIV/AIDS cases in the Commonwealth.  During his employment
there was a double standard and stereotypical view that
employees of Chinese origin should work harder than others, and
other staff mocked the plaintiff's national origin.  When he
first met the plaintiff, defendant Ostroff stated that the
plaintiff was from a place where many bad things are from.

The plaintiff complained, but he was told that if he complained more he would receive more work. He was told that he was different from other staff members who were not of Chinese origin. The PADOH told the plaintiff that, if others could do his job, it would terminate him. It retaliated against him after he described several instances of discrimination in connection with a complaint filed by an Asian American who later left the PADOH.

The plaintiff identified many errors in the data with which he was working and, thereby, saved the Commonwealth millions of dollars in funding. Still he was threatened and told that he could not expose the truth.

While they expanded the number of staff members in other units, the defendants cut the number of staff members in the plaintiff's unit until he was the only one in his unit. The plaintiff needed to use his spare time to complete his work.

The plaintiff was assigned to work with HIV data from 2005.  Although it was projected that it would take numerous employees months to process the data, he was ordered to process the data in a matter of weeks.  His requests for additional time and assistance were denied.  When the plaintiff explained that the time frame was unrealistic, defendant Burnhauser threatened to discipline him if he did not complete the processing within six weeks.

The excessive work and groundless harassment by the defendants caused the plaintiff severe emotional distress.  The plaintiff became depressed and his health began to deteriorate. His medical providers advised him to work only intermittently. By the end of June of 2007, he was very ill and weak.  At that time, the plaintiff had a discussion with an Equal Employment Opportunity official about discrimination, and he presented the opinion of his medical provider that he must take a rest. Aware that the plaintiff's illness could be exacerbated thereby, the PADOH harassed and abused the plaintiff.  It denied him annual leave even though he had accumulated 100 hours of vacation time.  When the plaintiff asked why,

4

defendant Ostroff told him that it was because he had failed to complete the 2005 data for the past two years.

On July 23, 2007, the plaintiff filed a complaint with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission.  He was suspended on August 24, 2007 and fired on September 4, 2007.

The plaintiff claims that during his employment the defendants subjected him to a hostile work environment.  He alleges that they disciplined him unreasonably, denied him annual leave, suspended a password that he needed to complete his work, overloaded him with work, and denied him training. He alleges that they treated him differently than other staff members who were not of Chinese origin.  When he purportedly did not complete the enormous amount of work assigned to him to the defendants' satisfaction, they suspended him and then terminated his employment without just cause.  They also embarked on a campaign to defame him and to destroy his career and reputation.  In this regard, they concealed documents from him and they falsified the reasons for his termination.  They

also failed to return all of his personal belongings to him after he was terminated.

The State Civil Service Commission oversees hiring, promotions, furloughs, and terminations of civil servants.  On December 3, 2007, the Commission held a hearing.  Pennsylvania law mandates the provision of interpreters for proceedings before administrative agencies for foreign-born persons with limited English proficiency.  The plaintiff requested an interpreter for the hearing, but the Commission denied his request.  Thus, he could not fully address his issues in the hearing.

Also, before the hearing the plaintiff informed the Commission that he was seriously ill and that he might not be able to participate in a hearing lasting longer than two hours. Despite his serious health condition, after the hearing had lasted longer than two hours, the Commission denied the plaintiff's request for a continuance of the hearing to another day.

6

In May of 2009, the plaintiff went to the State Civil Service Commission office to discuss his case and job information.  When he asked to review his file, he was told to come back another day.  When he went back another day, Commission John Does called the police and the police stopped, searched, and arrested the plaintiff.

On February 7, 2011, the plaintiff went to the PADOH office for a public document and job information.  The PADOH called the police and falsely accused the plaintiff of making a threat.  The police stopped and searched the plaintiff.

The third amended complaint contains eighteen counts. Counts One through Four are Title VII claims against the Commonwealth and the PADOH for retaliation, national origin and racial harassment, and national origin discrimination.  Count Five is a Title VII claim against the Commonwealth, the PADOH, and the State Civil Service Commission for racial discrimination.  Counts Six through Ten are 42 U.S.C. § 1983 and § 1985 claims against defendants Urdaneta, Burnhauser, Ostroff, and the Doe defendants.  Counts Eleven through

Eighteen are PHRA claims against defendants Urdaneta, Burnhauser, Ostroff, and the Doe defendants.

The Doe defendants have not been identified and have not been served in this case.  The other defendants have filed a motion to dismiss the third amended complaint.

II. Motion to Dismiss and Pleading Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

8

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

9

"To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'" *Ashcroft,
supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at
570). "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than
a sheer possibility that a defendant has acted unlawfully." *Id.*
But "a complaint need not pin plaintiff's claim for relief to a
precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296
(2011). Rule 8(a)(2) "requires only a plausible 'short and
plain' statement of the plaintiff's claim, not an exposition of
his legal argument." *Id.* The factual detail necessary to
satisfy the standard will vary depending on the case. *In re
Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320
n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be
liberally construed and "'however inartfully pleaded, must be

10

held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III. Discussion.

A.   Short and Plain Statement.

The defendants contend that the plaintiff's third amended complaint fails to comply with Fed.R.Civ.P. 8's requirement of a short and plain statement of the claim.  They contend that the third amended complaint, which consists of 351 paragraphs and more than sixty-seven pages, is difficult to follow.  They also contend that the plaintiff has failed to clearly allege facts which give rise to an inference of discrimination.

The third amended complaint is lengthy and somewhat difficult to follow.  But considering the liberal construction afforded to pleadings drafted by *pro se* parties, we conclude

that it sufficiently complies with the pleading requirements of Fed.R.Civ.P. 8.  And, accepting the factual allegations as true and construing them in the light most favorable to the plaintiff, the third amended complaint does allege facts from which an inference of discrimination can be drawn.

B. State Civil Service Commission.

Count Five of the third amended complaint is a Title VII claim against among others the State Civil Service Commission.  The plaintiff claims that he was subject to racial discrimination by the Commission.

The Commission contends that it should be dismissed from the case because the plaintiff has not alleged that it was his employer.

42 U.S.C.A. § 2000e-2(a)(1) provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to

12

discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin."   With certain limited exceptions not applicable here, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b).  The term "person" in turn is defined to include governments and governmental agencies. 42 U.S.C.A. § 2000e(a).

42 U.S.C.A. § 2000e-2(b) provides that it is an unlawful employment practice for an employment agency "to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin."   An "employment agency" is defined as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for

13

employees opportunities to work for an employer and includes an agent of such a person."  42 U.S.C.A. § 2000e(c).

The plaintiff alleges that the State Civil Service Commission oversees hiring, promotions, furloughs, and terminations of civil servants.  Based on that allegation, we cannot say as a matter of law at this point that Commission does not meet the definition of an employer or of an employment agency in Title VII.  Thus, we recommend that the motion to dismiss be denied as to the Title VII claim against the Commission.

C. Statute of Limitations.

The defendants contend that the plaintiff's 42 U.S.C. §§ 1983 and 1985 claims are barred by the statute of limitations.

"Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in

14

which the cause of action accrued." *O'Connor v. City of Newark,* 440 F.3d 125, 126 (3d Cir. 2006).  Section 1985 claims are subject to the same statute of limitations. *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 79 (3d Cir. 1989).  The Pennsylvania statute of limitations for personal injury actions is two years. *Garvin v. City of Philadelphia,* 354 F.3d 215, 220 (3d Cir. 2003).  A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which his action is based. *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998).  "A section 1985 claim accrues when the plaintiff knew or should have know of the alleged conspiracy." *Dique v. New Jersey State Police,* 603 F.3d 181, 189 (2010).

The statute of limitations is an affirmative defense and the burden of establishing its applicability rests with the defendants. *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989).  A motion to dismiss may only be granted on the basis of the statute of limitations if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."

15

*Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d
Cir. 1978)(motion to dismiss); 5A Wright & Miller, *Federal
Practice and Procedure* §1368 (2d ed. 1990)("If the affirmative
defense clearly is established in the pleadings, as, for
example, when a statute of limitations defense is apparent on
the face of the complaint and no question of fact exists, then
a judgment on the pleadings may be appropriate.").

The defendants acknowledge that the plaintiff has
pleaded some conduct which may not be barred by the statute of
limitations.  But they are seeking dismissal on the basis of
the statute of limitations of all claims based on conduct that
occurred prior to April 13, 2009 (two years prior to the date
the plaintiff filed this action).  They assert that the
plaintiff's § 1983 and 1985 claims based on any harassment or
discipline during his employment and his termination, which
occurred in 2007, are barred by the statute of limitations.

The plaintiff contends, however, that those claims are
part of a continuing violation and, thus, are not barred by the
statute of limitations.

16

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)(quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1295 (3d Cir. 1991)).  The plaintiff must show that the defendant's conduct is part of a continuing practice and is more than the occurrence of isolated or sporadic acts. *Rush v. Scott Speciality Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997). Several factors are relevant to the determination of whether there is a continuing violation:

> (1) subject matter - whether the violations
> constitute the same type of discrimination,
> tending to connect them in a continuing
> violation; (2) frequency - whether the acts are
> recurring or more in the nature of isolated
> incidents; and (3) degree of permanence -
> whether the act had a degree of permanence
> which should trigger the plaintiff's awareness
> of and duty to assert his/her rights and
> whether the consequences of the act would

17

> continue even in the absence of a continuing
> intent to discriminate.

*Cowell, supra,* 263 F.3d at 292.  The focus of the continuing

violation doctrine is the affirmative acts of the defendant.

*Id.* at 293.

The continuing violation theory does not save the

claims based on the defendants' discipline of the plaintiff

during his employment or their termination of his employment.

These are discrete actions which bear no connection to the

later acts alleged by the plaintiff after his termination.

Thus, the continuing violation theory is not applicable to save

those claims from the statute of limitations. *See O'Conner v.*

*City of Newark,* 440 F.3d 125, 127-29 (3d Cir. 2006)(discussing

continuing violation theory and discrete acts).  But in the

context of a motion to dismiss, where the issue is to be

decided on the basis of the third amended complaint's

allegations, the plaintiff's hostile environment claim cannot

be held to be barred by the statute of limitations.  Also,

because it is not clear from the allegations of the third

amended complaint when the plaintiff learned of the alleged

conspiracy to violate his rights, it cannot be held that his 42 U.S.C. § 1985 claims are barred by the statute of limitations.

D. Property Claims.

The defendants contend that the plaintiff's due process claims based on their alleged failure to return all of his property after his termination are barred because the plaintiff had an adequate state postdeprivation remedy.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), a state prisoner claimed that prison officials had negligently deprived him of his property without due process of law.  The Court concluded that the alleged loss even though negligently caused amounted to a deprivation of property under the Fourteenth Amendment's due process clause. *Id.* at 536-37.[1]  The Court

1.  *Parratt* was subsequently overruled to the extent that it stated that a mere lack of due care by a state official may deprive an individual of property under the Fourteenth Amendment. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  In *Daniels,* the Court concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended
                                                        (continued...)

held, however, that random, unauthorized, negligent

deprivations by state officials of a prisoner's personal

property are not actionable under the due process clause where

there exists a remedy under state law for reimbursement. *Id.* at

541-43.  *Hudson v. Palmer*, 468 U.S. 517 (1984), extended this

concept to include intentional unauthorized deprivations of

property.  The Court in *Hudson* reasoned:

> While *Parratt* is necessarily limited by
> its facts to negligent deprivations of
> property, it is evident . . . that its
> reasoning applies as well to intentional
> deprivations of property.  The underlying
> rationale of *Parratt* is that when deprivations
> of property are effected through random and
> unauthorized conduct of a state employee,
> predeprivation procedures are simply
> 'impracticable' since the state cannot know
> when the deprivations will occur.  We can
> discern no logical distinction  between
> negligent and intentional deprivations of
> property insofar as the 'practicality' of
> affording predeprivation process is concerned.
> The State can no more anticipate and control in
> advance the random and unauthorized intentional
> conduct of its employees than it can anticipate
> similar negligent conduct.  Arguably,
> intentional acts are even more difficult to
> anticipate because one bent on intentionally
> depriving a person of his property might well

---

1.  (...continued)
loss of or injury to life, liberty, or property." *Id.* at 328.

> take affirmative steps to avoid signaling his
> intent.

*Id*. at 533.  The Court in *Hudson* held that an unauthorized

intentional deprivation of property does not violate the due

process clause provided that adequate state postdeprivation

remedies are available. *Id.*  "For intentional, as for negligent

deprivations of property by state employees, the state's action

is not complete until and unless it provides or refuses to

provide a suitable postdeprivation remedy." *Id.* (footnote

omitted).

In this case, the plaintiff alleges that the defendants

improperly failed to return all of his property.  He does not

allege that this was a taking pursuant to an established

procedure.  By application of the reasoning of *Parratt* and

*Hudson,* the material question is whether the plaintiff had an

adequate postdeprivation remedial process available to him for

the loss of his property.

The defendants contend that the plaintiff had an

adequate postdeprivation remedy in the form of an action for

replevin or conversion.  But, it appears, the defendants may be entitled to sovereign immunity from any such state law claims. *See* 42 Pa.C.S.A. § 8521(a).  Thus, we cannot conclude as a matter of law that the plaintiff had an adequate postdeprivation remedy.[2]

            E.   42 U.S.C. § 1985 Claims.

The defendants contend that the third amended complaint fails to state a 42 U.S.C. § 1985 claim upon which relief can be granted because the plaintiff has failed to allege a conspiracy.

---

2.    The defendants suggest that they may not be entitled to sovereign immunity from such state law claims on the basis of the person property exception to sovereign immunity found in 42 Pa.C.S.A. § 8522(b)(3).  But that section only applies to negligence claims and "only where the personal property *itself* is alleged to have cause the injury." *Larsen v. State Employees' Retirement System,* 553 F.Supp.2d 403, 421 (M.D.Pa. 2008)(Jones, J.).  Thus, that section does not appear to be applicable to any claims that the plaintiff may have had based on the defendants' intentional failure to return his personal property.  Thus, we cannot conclude that the plaintiff had an adequate postdeprivation remedy.

42 U.S.C. § 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006)(quoting § 1985(3)). Section 1985(3) is limited to conspiracies based on racial or some other class-based invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971).

The defendants contend that the plaintiff has failed to plead a conspiracy with sufficient specificity.

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989).  To allege a conspiracy claim upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010).  "To properly plead such an agreement, 'a bare assertion of conspiracy will not

suffice.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The plaintiff alleges that the defendants conspired and that they took numerous acts over the course of a period of time in furtherance of the conspiracy.  The plaintiff has alleged facts from which it can reasonably be inferred that the defendants reached an agreement with regard to how they were going to treat the plaintiff.  Accordingly, the plaintiff has sufficiently alleged a conspiracy.  Thus, the Section 1985 claim should not be dismissed.

F.  1983 - Defamation Claim.

In Count VIII of the third amended complaint, the plaintiff claims that the defendants defamed him.  He presents this claim as a 42 U.S.C. § 1983 claim.  The defendants contend that that claim fails to state a claim upon which relief can be granted because the plaintiff does not have a liberty interest in his reputation that is protected by the Due Process Clause.

24

An interest in one's reputation is not by itself an interest protected by the Due Process Clause. *Paul v. Davis,* 424 U.S. 693, 712 (1976).  But "[r]eputational harm can constitute a protected interest when coupled with an additional deprivation of a protected right or interest." *Baraka v. McGreevey,* 481 F.3d 187, 208 (3d Cir. 2007).  "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d. Cir. 2006)(italics in original).  This is known as the "stigma-plus" test. *Dee v. Borough of Dunmore,* 549 F.3d 225,  234  (3d Cir. 2008).

The defendants intimate that the plaintiff cannot satisfy the "plus" part of the "stigma-plus" test.

"In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Hill, supra,* 455

25

F.3d at 236 (quoting *Codd v. Velger,* 429 U.S. 624, 628 (1977)).
The termination satisfies the "plus" part of "stigma-plus"
test. *Id.*  This is so even if, as a matter of state law, the
employee lacked a property interest in the job. *Id.* at 238.

Because the plaintiff alleges that the defendants
defamed him in connection with his termination, a conclusion as
a matter of law that the plaintiff will not be able to satisfy
the stigma plus test is not warranted.  Accordingly, Count VIII
of the third amended complaint should not be dismissed.

G. 1983 - Intentional Infliction of Emotional Distress
   Claim.

Count IX of the third amended complaint is labeled as a
42 U.S.C. § 1983 claim for intentional infliction of emotional
distress.  In this count, the plaintiff alleges that the
defendants' actions caused him severe emotional distress.

We agree with the defendants that the plaintiff has failed to state a federal claim upon which relief can be granted.  Although the plaintiff may be able to recover for his emotional distress in connection with his other claims, in Count IX he does not allege a federal claim upon which relief can be granted.[3]

H. PHRA Claims.

Defendants Ostroff, Urdanenta and Burnhauser contend that the third amended complaint fails to state PHRA aiding and abetting claims against them because the plaintiff has not alleged violations of the PHRA by his employer.  In response, the plaintiff asserts that he has decided to pursue all PHRA claims in state court.  Because the plaintiff has indicated his

---

3.  To the extent that Count IX is considered a state law claim for intentional infliction of emotional distress, the defendants would be entitled to sovereign immunity from such a claim. *See Boone v. Pennsylvania Office of Vocational Rehabilitation,* 373 F.Supp.2d 484, 495 (M.D.Pa. 2005)(Rambo, J.)(holding that intentional infliction of emotional distress claim against state official barred by sovereign immunity).

intent to abandon his PHRA claims in this court, we will
recommend that the PHRA claims be dismissed.

IV.  Recommendations.

     Based on the foregoing, it is recommended that the
defendants' motion (doc. 34) to dismiss the third amended
complaint be granted in part and denied in part.  It is
recommended that the motion be granted to the extent that the
42 U.S.C. § 1983 claims based on the defendants' discipline of
the plaintiff during his employment or their termination of his
employment be dismissed as barred by the statute of
limitations.  It is further recommended that Count IX of the
third amended complaint (labeled as a 42 U.S.C. § 1983 claim
for intentional infliction of emotional distress) be dismissed
because it fails to state a federal claim upon which relief can
be granted.  It is further recommended that the PHRA claims be
dismissed because the plaintiff has indicated his intent not to
proceed with such claims in this court.  It is recommended that
the motion to dismiss be denied in all other respects.

Finally, it is recommended that case be remanded to the

undersigned for further proceedings.


                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  March 14, 2012.